**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward D. Fitzhugh, | No. CV-19-04632-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Shauna Miller, et al., | |
| Defendants. | |

**INTRODUCTION**

Plaintiff Edward Fitzhugh ("Fitzhugh"), a disbarred attorney who is proceeding *pro se* in this case, hasn't experienced much success in the legal system in recent years. For part of 2011 and during half of 2013, Fitzhugh was suspended from the practice of law in Arizona. During his 2013 suspension, Fitzhugh also filed for bankruptcy. After a brief glimmer of hope—Fitzhugh's suspension ended in late 2013 and the bankruptcy court granted him a discharge in 2014—things took a turn for the worse. In 2016, Fitzhugh was charged with an array of disciplinary violations. The bar proceedings were a disaster. Fitzhugh missed deadlines, defaulted, was ordered disbarred, and then filed a barrage of pleadings that resulted in him being declared a vexatious litigant. On top of all of this, the bankruptcy court revoked Fitzhugh's discharge after determining he had engaged in fraud.

Undeterred, Fitzhugh has now sued the State Bar of Arizona ("SBA") and Shauna Miller ("Miller") (collectively, "Defendants"), the SBA prosecutor who handled his 2016 case. He asserts federal claims under 42 U.S.C. § 1983 and state-law claims for "abuse of

process" and "prosecutorial misconduct/negligence." As a remedy, he seeks only money damages—he does not request reversal of the SBA's disbarment decision.

Now pending before the Court are (1) Defendants' motion to dismiss (Doc. 14), (2) Defendants' request for judicial notice (Doc. 13), and (3) Fitzhugh's motion for leave to file a surreply (Doc. 28). For the following reasons, the motion to dismiss will be granted, the request for judicial notice will be granted, the motion to file a surreply will be denied, and this action will be terminated.

## BACKGROUND

The facts as alleged in the operative complaint (Doc. 31), and as established through Defendants' unopposed request for judicial notice (Doc. 13)[1] and the exhibits attached to the complaint, are as follows.

I. Fitzhugh's Bar And Bankruptcy Proceedings

In October 2011, Fitzhugh was suspended from the practice of law in Arizona for a period of 30 days. (Doc. 13-3 at 18.)

In March 2013, Fitzhugh was suspended from the practice of law in Arizona for a period of six months. (Doc. 13-2 at 2; Doc. 13-3 at 17.)

In May 2013, Fitzhugh filed a petition for Chapter 7 bankruptcy. (Doc. 13-9 at 3.)

In May 2014, the bankruptcy court issued an order of discharge. (Doc. 13-7 at 2.)

On April 29, 2016, Miller, in her capacity as Senior Bar Counsel, filed a four-count complaint against Fitzhugh. (Doc. 31 ¶ 13; Doc. 13-2 at 2-19.) The allegations in the complaint stemmed from conduct during Fitzhugh's representation of various clients, Fitzhugh's conduct while suspended from the practice of law, and Fitzhugh's conduct during his bankruptcy proceeding. (*Id.*).[2]

---

[1] Fitzhugh indicates in the caption of his response (Doc. 23) that he objects to Defendants' request for judicial notice. His response, however, does not provide any explanation for his objection. Defendants request that the Court take judicial notice of documents relating to Fitzhugh's bar proceedings and bankruptcy proceedings, but only for their existence and not for the underlying truth. (Doc. 13 at 3.) The Court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Therefore, Defendants' request for judicial notice will be granted.

[2] Between April 2015 and April 2016, the Attorney Probable Cause Committee of the

|  |  |
|---|---|
| 1 | In May 2016, a default was entered against Fitzhugh for failure to timely respond to |
| 2 | the complaint. (Doc. 13-3 at 2.) |

In June 2016, Fitzhugh sought and obtained an extension to file a responsive pleading. (*Id.*) However, after the presiding disciplinary judge ("PDJ") determined that Fitzhugh had failed to comply with the new deadline, and that Fitzhugh's subsequent attempt to remedy the error was ineffective, the default was allowed to remain in effect. (*Id.* at 2-4.)[3]

In July 2016, Fitzhugh's aggravation and disciplinary hearing took place. (*Id.* at 4.) The hearing panel consisted of the PDJ, a member of the public, and an attorney. (*Id.*)

In August 2016, the hearing panel issued its "Decision and Order Imposing Sanctions." (Doc. 13-3.) In a nutshell, the hearing panel concluded (1) there was clear and convincing evidence that Fitzhugh had violated various ethical rules, (2) the "most serious ethical violations" involved making intentional misrepresentations to the SBA and the bankruptcy court, and (3) the appropriate sanction, in light of Fitzhugh's past suspensions, "similar misconduct," deception, and lack of contrition, was disbarment. (*Id.* at 14-22).

In September 2016, Fitzhugh's disbarment went into effect. (Doc. 13-4 at 2.)

In April 2017, the Arizona Supreme Court denied Fitzhugh's petition for review. (Doc. 13-5 at 2.)

In August 2018, the PDJ issued an order declaring that Fitzhugh was a vexatious litigant. (Doc. 13-6 at 3.) This order was predicated on Fitzhugh's filing of a "series of . . . pleadings" following the issuance of the hearing panel's disbarment order. (*Id.*)

In October 2018, the Arizona Supreme Court declined to assert jurisdiction over Fitzhugh's petition for a special action concerning the vexatious-litigant order. (*Id.*)

In November 2018, the Arizona Supreme Court denied Fitzhugh's motion for reconsideration. (*Id.* at 4.)

---

Supreme Court voted on whether each count was supported by probable cause. (Doc. 13-2 at 20-27.) All four votes resulted in unanimous probable-cause findings. (*Id.*)

[3] In his response to the motion to dismiss, Fitzhugh identifies various reasons why, in his view, the PDJ erred by entering and maintaining the default. (Doc. 23 at 1-3.)

II. The Current Lawsuit

Fitzhugh initiated this action in July 2019 (Doc. 1) and filed a first amended complaint ("FAC") in December 2019 (Doc. 31).

The FAC alleges that Miller "engaged in a personal vendetta against Plaintiff to harass and take adverse actions against him." (Doc. 31 ¶ 7.) The source of this vendetta, according to the FAC, is an earlier bar proceeding in which Fitzhugh successfully represented a client "regarding her application for admission . . . to practice law in Arizona" over Miller's objection. (*Id.* ¶¶ 5-6.) The FAC further alleges that Miller sought to carry out this vendetta by including, in the bar complaint she filed in April 2016, "knowingly false allegations intended to harm Plaintiff in his professional career and personal life." (*Id.* ¶ 14.)[4] Based on these allegations, the FAC asserts four causes of action:

▪ Count One asserts a state-law claim against Miller for "abuse of process," alleging that she "abused the legal process and the power and authority vested in her employer to pursue her personal vendetta against Plaintiff." (*Id.* ¶¶ 15-17.)

▪ Count Two asserts a state-law claim against Miller for "Prosecutorial Misconduct/Negligence." (*Id.* ¶¶ 18-22.)

▪ Count Three asserts a claim against Miller under 42 U.S.C. § 1983 for violation of his "Constitutionally Protected . . . Property Rights." (*Id.* ¶¶ 23-24.) The property right at issue is Fitzhugh's "license[] to practice law in Arizona." (*Id.* ¶ 1.)

▪ Count Four asserts a claim against the SBA for "Negligent Hiring, Training, and Supervision." (*Id.* ¶¶ 25-27.) This claim appears to be based both on federal law (42 U.S.C. § 1983) and state law. (*Id.*)

**ANALYSIS**

I. Motion To Dismiss

Defendants identify an array of reasons why the FAC should be dismissed. First, Defendants argue the Court lacks jurisdiction over any claims against the SBA because it

---

[4] The FAC also alleges that Miller intentionally withheld "critical evidence" during a bar investigation into a separate matter. (Doc. 31 ¶¶ 8-12.)

- 4 -

is entitled to immunity under the Eleventh Amendment. (Doc. 14 at 4-6.) Second, Defendants argue the *Rooker-Feldman* doctrine precludes subject-matter jurisdiction over any claims grounded in Fitzhugh's disbarment. (*Id.* at 6-8.) Third, Defendants argue that Miller enjoys absolute immunity because she is being sued for conduct undertaken in a prosecutorial capacity. (*Id.* at 8-11.) Fourth, Defendants argue that Count One, the "abuse of process" claim, fails to state a claim under Rule 12(b)(6). (*Id.* at 11.) Fifth, Defendants argue that, even putting aside the Eleventh Amendment, the SBA is not a proper § 1983 defendant because it is not a "person." (*Id.* 12-13.) Sixth, Defendants argue that Count Four, the negligent training/supervision claim, necessarily fails under both federal and state law. (*Id.* at 13-14.)

### A. **Subject Matter Jurisdiction**

Defendants argue the Court lacks subject matter jurisdiction over some or all of Fitzhugh's claims. (Doc. 14 at 4-8.) "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). "[T]he Supreme Court has specifically instructed that a district court must first determine whether it has jurisdiction before it can decide whether a complaint states a claim." *Moore v. Maricopa Cty. Sheriff's Office*, 657 F.3d 890, 895 (9th Cir. 2011). Thus, the Court will begin by addressing the arguments that Defendants characterize as pertaining to subject matter jurisdiction.

#### 1. *Rooker-Feldman*

Defendants argue the *Rooker-Feldman* doctrine precludes Fitzhugh from invoking the Court's jurisdiction to assert any claims stemming from his disbarment. (Doc. 14 at 6-8.)

The *Rooker-Feldman* doctrine prohibits district courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

The doctrine "exhibit[s] the limited circumstances in which [the U.S. Supreme Court's] appellate jurisdiction over state-court judgments . . . precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate." *Id.* at 291. *Rooker-Feldman* is not triggered simply because there is or was a parallel state-court action. *Id.* at 292. Although a parallel state-court proceeding may result in other forms of preclusion, *Rooker-Feldman* is only triggered when a district court is called upon "to overturn an injurious state-court judgment." *Id.* at 291-92. Properly understood, then, *Rooker-Feldman* is itself a "fairly narrow preclusion doctrine," separate and distinct from claim and issue preclusion, that prohibits a district court from reviewing a state court's decision. *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010). *See also Cooper v. Ramos*, 704 F.3d 772, 778 (9th Cir. 2012) ("We recognize that the Supreme Court has been very sparing in its invocation of the doctrine, so we are careful not to sweep too broadly.") (citation omitted).

In *Noel v. Hall,* 341 F.3d 1148 (9th Cir. 2003), the Ninth Circuit provided comprehensive guidance concerning *Rooker-Feldman* and its limited applicability. *Noel* arose from a failed agreement to train a racehorse. *Id.* at 1151. The demise of the relationship resulted in four different state court lawsuits. *Id.* at 1152-53. Eventually, the would-be trainer, Noel, filed suit in federal court, alleging a variety of federal and state-law claims, including a "fiduciary duty claim . . . which [was] essentially the same issue of fiduciary duty [that] was being litigated" in one of the state court actions. *Id.* at 1154. The district court dismissed that claim pursuant to *Rooker-Feldman* but the Ninth Circuit reversed. After thoroughly recounting the history of the *Rooker-Feldman* doctrine, the court announced the following "general formulation [that] describes the distinctive role of the *Rooker–Feldman* doctrine in our federal system":

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does not bar jurisdiction. If there is simultaneously pending federal and state court

> litigation between the two parties dealing with the same or related issues, the federal district court in some circumstances may abstain or stay proceedings; or if there has been state court litigation that has already gone to judgment, the federal suit may be claim-preclused under [28 U.S.C.] § 1738. But in neither of these circumstances does *Rooker–Feldman* bar jurisdiction.

*Id.* at 1164. And in a subsequent case, the Ninth Circuit summarized the test even more succinctly, explaining that if a plaintiff in a federal case "sues . . . an adverse party[], not a state court," and "does not directly challenge a state court's factual or legal conclusion," then the federal lawsuit is "not a forbidden appeal under *Rooker-Feldman*." *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1030 (9th Cir. 2005).

*Noel* and its progeny compel the conclusion that *Rooker-Feldman* doesn't apply here. Fitzhugh does not seek to set aside the hearing panel's August 2016 decision, the Arizona Supreme Court's subsequent rejection of his appeals, or the ultimate act of disbarment. Instead, he seeks monetary damages against Miller and the SBA for alleged violations of his constitutional (and state-law) rights. Because Fitzhugh is not "directly challeng[ing] a state court's factual or legal conclusion," *Manufactured Home,* 420 F.3d at 1030, and does not "assert[] as a legal wrong an allegedly erroneous decision by a state court[] and seek[] relief from a state court judgment based on that decision," *Hall*, 341 F.3d at 1164, *Rooker-Feldman* is inapplicable.

The cases cited in Defendants' brief do not compel a different result. In *Musselwhite v. State Bar of Texas*, 32 F.3d 942 (5th Cir. 1994), an attorney who had been suspended by the Texas State Bar responded by filing a lawsuit in federal court seeking, *inter alia*, "declaratory and injunctive relief" to overturn the suspension. *Id.* at 944. The district court dismissed under *Rooker-Feldman* and the Fifth Circuit affirmed, holding that the attorney was attempting to challenge "aspects of his particular trial" and that "[t]o evaluate [those challenges] would require review of the state court judgment . . . [which] we are without jurisdiction to do." *Id.* at 947. Here, in contrast, Fitzhugh isn't seeking to overturn the relevant "state court judgment" (*i.e.,* the disbarment decision). Instead, he is asserting claims for money damages based on alleged violations of his constitutional and other

- 7 -

rights. Critically, even if Fitzhugh were somehow to prevail on those claims, Defendants haven't shown that such a victory would effectively require the reversal of the underlying disbarment decision. *Cooper*, 704 F.3d at 777-78 (emphasizing that courts considering the applicability of *Rooker-Feldman* must "'pay close attention to the *relief* sought by the federal-court plaintiff'" and that "[t]he doctrine does not preclude a plaintiff from bringing an 'independent claim' that, though similar or even identical to issues aired in state court, was not the subject of a previous judgment by the state court") (citation omitted).[5]

Finally, it is true that, in *Johnson v. Supreme Court of Illinois*, 165 F.3d 1140 (7th Cir. 1999), the Seventh Circuit held that *Rooker-Feldman* precluded a disbarred attorney from asserting a § 1983 claim against the bar officials who had participated in his disbarment proceedings, even though the plaintiff was only seeking money damages and wasn't seeking reinstatement. The court concluded that *Rooker-Feldman* remained applicable because "the only support for damages would be the disbarment, and the only support for a finding of liability would be events that were or could have been contested in the disbarment proceedings." *Id.* at 1142. Although this reasoning has some force, it is inconsistent with Ninth Circuit law concerning *Rooker-Feldman*, particularly Ninth Circuit law post-*Noel*, which this Court obviously must follow. *See also Unknown Party v. Ariz. Bd. of Regents*, 2019 WL 7282027, *7 (D. Ariz. 2019) (noting differences between Seventh

---

[5] *Musselwhite* is similar to *Mothershed v. Justices of Supreme Ct.*, 410 F.3d 602 (9th Cir. 2005), a Ninth Circuit case not cited in either side's briefs. The plaintiff in *Mothershed* was an Oklahoma-barred attorney who lived and practiced in Arizona, where he was unlicensed. *Id.* at 605. As a result, the plaintiff was censured by the Arizona Supreme Court (for unauthorized practice of law) and then disbarred in Oklahoma. *Id.* Afterward, the plaintiff filed a sprawling lawsuit in federal court in Arizona in which he attempted to sue the judicial and bar officials in Arizona and Oklahoma who had participated in his disciplinary proceedings. *Id.* Critically, his argument, just like the plaintiff's argument in *Musselwhite*, was that the *outcome* in both disciplinary proceedings was invalid—he argued that "the Arizona disciplinary proceedings were invalid because he had not been served with a summons" and that "the Oklahoma proceedings were likewise defective because his hearing did not occur between thirty and sixty days after appointment of the trial panel, as required by Rule 6.7 of the Oklahoma Rules Governing Disciplinary Proceedings." *Id.* The Ninth Circuit concluded these claims were barred by *Rooker-Feldman* because they "constitute a particularized challenge to the . . . disciplinary proceedings' results." *Id.* at 607-08. But here, as discussed above, Fitzhugh isn't seeking to overturn the "disciplinary proceedings' results"—he is only seeking money damages.

Circuit and Ninth Circuit law concerning *Rooker-Feldman*'s scope and applicability).

In sum, although there are many problems with Fitzhugh's litigation strategy, *Rooker-Feldman* isn't one of them.

2. Eleventh Amendment

Defendants argue that the "Court lacks jurisdiction over any claims against the [SBA] because it is entitled to absolute immunity under the Eleventh Amendment." (Doc. 14 at 4, capitalization omitted.)

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Id.* "As the Supreme Court has applied the Eleventh Amendment, an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Pittman v. Oregon Employment Dep't*, 509 F.3d 1065, 1071 (9th Cir. 2007) (quotation omitted). Generally, "agencies of the state are [also] immune from private damage actions or suits for injunctive relief brought in federal court." *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988). "To determine whether a governmental agency is an arm of the state," courts examine five factors:

> [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only in the name of the state, and [5] the corporate status of the entity.

*Id*. "To determine these factors, the court looks to the way state law treats the entity." *Id*.

Here, the first factor ("whether a money judgment would be satisfied out of state funds") seems to cut against a finding that the SBA is an arm of the state. This is because the SBA maintains a treasury fund that is derived from the annual fees collected from SBA members. *See* Ariz. Sup. Ct. R. 32(d)(1), (3) (the SBA's Board of Governors shall "[f]ix and collect . . . fees approved by the Supreme Court, which shall be paid into the treasury of the State Bar" and shall "make appropriations and disbursements from funds of the

[SBA] to pay expenses necessary for carrying out its functions"). Presumably—and the Court uses the word presumably because neither party briefed this issue—a money-damages judgment against the SBA could be satisfied using funds from the treasury fund. In that scenario, the first factor wouldn't be satisfied. With that said, it seems possible that, if a money judgment were large enough, the SBA's treasury fund would be insufficient to satisfy it. The parties have not addressed whether state funds would be available to pay such a large judgment.[6]

The second factor ("whether the entity performs central governmental functions") weighs heavily in favor of a finding that the SBA is an arm of the state. The SBA is a creation of the Arizona Supreme Court. *See* Ariz. Sup. Ct. R. 32(a) ("The Supreme Court of Arizona maintains under its direction and control a corporate organization known as the State Bar of Arizona."). *See also Scheehle v. Justices of the Sup. Ct. of the State of Ariz.*, 120 P.3d 1092, 1100 (Ariz. 2005) ("By virtue of our constitutional power over attorneys as officers of the court, this Court created the State Bar of Arizona."). The SBA's role "is completely defined by the [Arizona Supreme Court] . . . [and] acts as the agent of the court under its continuous supervision." *Bates v. State Bar of Ariz.*, 433 U.S. 350, 361 (1977). Every attorney licensed to practice law in Arizona "must be a member of the [SBA]." Ariz. Sup. Ct. R. 32(a)(1). "The [SBA] exists to serve and protect the public with respect to the provision of legal services and access to justice." Ariz. Sup. Ct. R. 32(a)(2). It does this in part by "assist[ing] [the Arizona Supreme Court] with the regulation and discipline of persons engaged in the practice of law." Ariz. Sup. Ct. R. 32(a)(2)(D). The Ninth Circuit

---

[6] In *Gruber v. Oregon State Bar*, 2019 WL 2251826 (D. Or. 2019), the court held that the Oregon State Bar didn't qualify as an arm of the state under the first *Mitchell* factor because (1) "[a]ny money judgment would come from the Bar's collection of fees" and (2) the Oregon legislature had enacted a statute that specifically precluded state liability for the bar's indebtedness and obligations. *Id.* at *5 (citing Or. Rev. Stat. § 9.010(6)). Here, in contrast, the parties have not identified any Arizona statute that specifically exempts the state from liability for the SBA's debts. In any event, the *Gruber* court ultimately concluded that, even though the first *Mitchell* factor cut against a finding of Eleventh Amendment immunity, it was not "dispositive" and the other factors supported the conferral of immunity. *Id.* at *5-7 ("Despite the independent financial status vested in the Bar through the State Bar Act, the legislature intended it to perform central government functions in concert with the Oregon Supreme Court and as such it is an arm of the state entitled to Eleventh Amendment Immunity.").

has stated "lawyers are essential to the primary governmental function of administering justice." *Mothershed*, 410 F.3d at 611 (citation omitted). As a result, "States have broad power to regulate the practice of law." *United Mine Workers of Am. v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967).

Fitzhugh argues the third factor cuts in his favor because the SBA "may sue and be sued." (Doc. 23 at 12-13.) But this argument is based on an earlier version of Rule 32. Before 2017, Rule 32 included a provision allowing the SBA to sue and be sued. 2015 Ariz. Sup. Ct. R. 32(a). An amendment, effective January 1, 2017, removed that language. 2016 Ariz. Sup. Ct. R. 32. Additionally, under Arizona law, a state agency is "not liable for acts and omissions of its employees constituting . . . [t]he exercise of an administrative function involving the determination of fundamental governmental policy, and "[t]he determination of a fundamental governmental policy . . . include[s]. . . [t]he licensing and regulation of any profession or occupation." A.R.S. § 12-820.01(A)(2), (B)(3). Thus, the third factor cuts in favor of classifying the SBA as an arm of the state.

The fourth factor ("whether the entity has the power to take property in its own name or only in the name of the state") also weighs in favor of such a classification. Fitzhugh argues the SBA "may enter into contracts and acquire, hold, encumber, dispose of and deal in and with real and personal property." (Doc. 23 at 12-13.) But again, Fitzhugh bases this argument on a now-obsolete version of Rule 32. The January 2017 amendment removed this language.

The fifth factor ("the corporate status of the entity") weighs against a finding that the SBA is an arm of the state because the SBA is a corporation. Ariz. Sup. Ct. R. 32(a) ("The Supreme Court of Arizona maintains under its direction and control a corporate organization known as the [SBA].").

Although the *Mitchell* factors present a mixed picture, on balance they support the conclusion that the SBA is an arm of the state and thus immune from suit under the Eleventh Amendment. This outcome is consistent with other decisions by and within the Ninth Circuit addressing the status of state bar associations. *See, e.g.*, *Breck v. Doyle*, 2019

WL 6048847, *2 (9th Cir. 2019) ("Eleventh Amendment immunity extends beyond the state itself. . . . We have previously recognized that both the Nevada Supreme Court and the [State Bar of Nevada] are arms of the State of Nevada, and so are immune from § 1983 damages claims.") (citation omitted); *Hirsh v. Justices of the Supreme Court of the State of Cal.*, 67 F.3d 708, 715 (9th Cir. 1995) ("The Eleventh Amendment's grant of sovereign immunity bars monetary relief from state agencies such as California's Bar Association . . . ."); *Strojnik v. State Bar of Ariz.*, 2020 WL 1275781, *3 (D. Ariz. 2020) ("Arizona state courts and courts in this District have definitively held that the State Bar 'is an arm of the Arizona Supreme Court,' and therefore, the State Bar 'is immune from suit under the Eleventh Amendment.'") (citations omitted). *Cf. Hass v. Oregon State Bar*, 883 F.2d 1453, 1461 (9th Cir. 1989) (concluding that, for antitrust purposes, the Oregon State Bar qualified "as an agency of the State of Oregon").

Accordingly, Fitzhugh's claims against the SBA must be dismissed.[7]

### B. Miller's Absolute Immunity From § 1983 Liability

Defendants argue that Miller, as a prosecutor, has absolute immunity from Fitzhugh's § 1983 claim for money damages. (Doc. 14 at 8-10.) Fitzhugh responds that Miller is not the type of prosecutor normally afforded absolute immunity, and even if she were, absolute immunity does not apply to investigative and administrative conduct. (Doc. 23 at 14-16.)

Although "Section 1983, on its face admits of no defense of official immunity . . . Congress did not intend § 1983 to abrogate immunities well grounded in history and reason. Certain immunities were so well established in 1871, when § 1983 was enacted, that we presume that Congress would have specifically so provided had it wished to abolish them." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quotations omitted). One such form of well-established immunity is prosecutorial immunity. As the Ninth Circuit has explained:

---

[7] It should be noted that, although the SBA frames its Eleventh Amendment argument as a jurisdictional challenge, the Ninth Circuit has stated that "the Eleventh Amendment is not a true limitation upon the court's subject matter jurisdiction, but rather a personal privilege that a state may waive." *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 760 (9th Cir. 1999). Nevertheless, nomenclature aside, the Eleventh Amendment bars Fitzhugh's claims against the SBA.

"Prosecutorial immunity applies to § 1983 claims. State prosecutors are absolutely immune from § 1983 actions when performing functions 'intimately associated with the judicial phase of the criminal process,' or, phrased differently, 'when performing the traditional functions of an advocate.' Prosecutors are entitled to qualified immunity, rather than absolute immunity, when they perform administrative functions, or 'investigative functions normally performed by a detective or police officer.'" *Garmon v. County of Los Angeles*, 828 F.3d 837, 842-43 (9th Cir. 2016) (citations and internal quotation marks omitted). These principles also apply to state bar prosecutors. *Hirsh,* 67 F.3d at 715 ("[State bar] agency prosecuting attorneys are entitled to quasi-judicial immunity so long as they perform functions similar to . . . prosecutors in a setting like that of a court."); *Clark v. Washington*, 366 F.2d 678, 681 (9th Cir. 1966) ("A prosecuting attorney, as a quasi-judicial officer, enjoys immunity from suit under the Civil Rights Act insofar as his prosecuting functions are concerned. . . . As an arm of the Washington Supreme Court in connection with disciplinary proceedings, the Bar Association . . . is therefore entitled to the same immunity which is afforded to prosecuting attorneys in that state.").

Given these principles, the immunity analysis turns on whether the conduct for which Miller is being sued is properly classified as prosecutorial activity (which triggers absolute immunity) or investigative and administrative activity (which does not). The FAC alleges that Miller (1) withheld evidence that an attorney who had once lodged a complaint against him subsequently withdrew the complaint (Doc. 31 ¶¶ 8-12 & p. 14) and (2) included "knowingly false allegations" in the bar complaint she filed against him in 2016 (*id.* ¶¶ 13-14). Fitzhugh asserts, in conclusory fashion, that such conduct constitutes "investigative and administrative conduct" and cites *Kalina v. Fletcher*, 522 U.S. 118 (1997), for the proposition that prosecutors do not have absolute immunity to commit perjury. (Doc. 23 at 15.)

These arguments are unavailing. In *Kalina*, the prosecutor commenced a criminal proceeding by filing an information with a motion for an arrest warrant, both of which were unsworn pleadings. *Id.* at 120-21. She also provided an affidavit in which she personally

vouched, under penalty of perjury, for the truth of the facts supporting the arrest warrant. *Id.* at 121. The Supreme Court found that absolute immunity attached to the filing of the information and the motion for the arrest warrant but stated that "testifying about facts is the function of the witness, not the lawyer," so the prosecutor was not afforded absolute immunity regarding the affidavit. *Id.* at 129-30.

Here, Miller's filing of the bar complaint in 2016 is similar to the *Kalina* prosecutor's filing of an information. She did not testify under oath regarding any of the facts underlying the complaint and simply filed it to initiate the disciplinary proceedings. (Doc. 13-2 at 19 [signature page, with no suggestion that Miller signed under penalty of perjury].) *Kalina* supports, rather than undermines, the conclusion that absolute immunity attaches to such conduct. *Cf. Wu v. State Bar of Cal.,* 935 F. Supp. 2d 315, 319-20 (C.D. Cal. 1997) (state bar prosecutors were entitled to absolute immunity, in lawsuit alleging they brought improper charges against plaintiff due to racial animus, because "what Wu is challenging are the decisions of [the bar prosecutors] to prosecute his cases, to settle his first case, and not to prosecute other attorneys. [The bar prosecutors] should enjoy absolute immunity from monetary liability for their performance of these essential prosecutorial functions.").

As for the FAC's allegations concerning Miller's alleged withholding of evidence, it is unclear whether those allegations have any relation to the bar prosecution,[8] but even assuming they do, courts have held that a prosecutor's decision to withhold evidence by failing to disclose it—which is different from affirmatively destroying evidence—falls within the ambit of absolute immunity. *Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) ("A prosecutor's decision not to . . . turn over exculpatory material before trial, during trial, or after conviction is . . . an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages.") (citations omitted).

---

[8] If not, it is unclear how those allegations could give rise to liability. The alleged withholding of evidence occurred in or before 2013 (Doc. 31 at 14), placing it outside the statute of limitations if proffered as a standalone basis for § 1983 liability. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (in general, the statute of limitations for § 1983 claims in Arizona is two years)

Accordingly, Miller is entitled to absolute immunity with regard to Count Three of the FAC.

C. **Remaining State-Law Claims**

For the reasons stated above, all of Fitzhugh's federal claims—his § 1983 claim in Miller in Count Three and his § 1983 claim against the SBA in Count Four—are subject to dismissal. Fitzhugh has not requested leave to amend these claims and the Court declines to grant such leave *sua sponte* because amendment would be futile—Fitzhugh's federal claims fail due to well-established immunity doctrines, not due to a failure to allege facts with sufficient particularity. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (although leave to amend should be freely granted, "a district court need not grant leave to amend where the amendment . . . is futile").

Still remaining are Fitzhugh's state-law claims against Miller in Counts One and Two.[9] In most instances, when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [pendent state-law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction.").

The *Cohill* factors weigh against retaining jurisdiction over Fitzhugh's state-law claims. This case is less than a year old and no trial date has been set, so declining jurisdiction will cause minimal duplication of effort. Further, considerations of fairness, comity, and federalism are best served by allowing Arizona courts to address state-law claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

---

[9] Although Count Four also appears to be asserting a state-law claim against the SBA, that claim is subject to dismissal based on the SBA's entitlement to Eleventh Amendment immunity.

1  Thus, the Court will decline to exercise jurisdiction over the remaining state-law claims.

2  III.   Motion To File A Surreply

"[S]ur-replies are highly disfavored and permitted only in extraordinary circumstances." *Finley v. Maricopa Cty. Sheriff's Office*, 2016 WL 777700, *1 n.1 (D. Ariz. 2016). "Although the Court may in its discretion allow the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Hill v. England*, 2005 WL 3031136, *1 (E.D. Cal. 2005).

Fitzhugh argues a surreply is necessary because Defendants raised new matters in their reply. (Doc. 28 at 1.) This is inaccurate. Defendants did not raise new matters in their reply—they merely pointed out cases and arguments raised in their motion that Plaintiff failed to address in his response. No valid reason exists for additional briefing.

Accordingly, **IT IS ORDERED** that:

(1)   Defendants' request for judicial notice (Doc. 13) is **granted**.

(2)   Defendants' motion to dismiss (Doc. 14) is **granted**.

(3)   Fitzhugh's motion for leave to file a sur-reply (Doc. 28) is **denied**.

(4)   The Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 1st day of April, 2020.

Dominic W. Lanza
United States District Judge